T. B. MOSELEY, ADMINISTRATOR OF J. W. STEPHENSON, v. WILL TAYLOR, SURVIVING PARTNER, ETC.

(Filed 11 April, 1917.)

**Partnership—Services—Profits and Loss—Dissolution by Death—Contributing Partner—Impairment of Capital—Distribution of Assets.**

Where, under partnership agreement, one of the partners is to contribute the capital and the other his services in managing the business, and receive "his part" by equally dividing the profits after paying all necessary expenses, and the partnership has been ·dissolved by the death of the contributing partner, and it has been ascertained that the capital has been impaired, the agreement will not admit of the construction that the surviving partner should receive for his services, in addition to his share of the profits, an equal distribution of the remaining capital; and there being. no profits for division, the surplus thereof, after paying the partnership debts, should be paid to the personal representative of the deceased partner.

CIVIL ACTION, tried at January Term, 1917, WAKE, before *Devin, J.*

A jury trial being waived, the court found the facts and rendered judgment as follows: "That the defendant Will Taylor, as surviving partner and individually, is indebted to the plaintiff in the sum of

$3,676.59, with interest thereon from 25 February, 1916, until paid, and also for the promissory notes described in the complaint, and being those set out in the final report of Will Taylor, surviving partner of the said firm of Will Taylor & Co., field in the office of the clerk of the Superior Court of Wake County, N. C., on 25 February, 1916, and which is recorded in Docket 'I,' page 271, in said office."

From this judgment, defendant appealed.

*R. N. Simms for plaintiff.*
*Armistead Jones & Son, Douglass & Douglass for defendant.*

BROWN, J. The decision of this appeal depends upon the construction of the following contract:

This agreement is made and entered into between J. W. Stephenson and Will Taylor has gone (?) into copartnership in horse and mule business at Raleigh, N. C., and the said J. W. Stephenson has this day put in $5,000 (five thousand dollars) to operate said business. The said Will Taylor agrees to manage the said business for his part. After all necessary expenses is paid, the profit shall be equally divided. This partnership business is to run twelve months, or longer if all parties are satisfied.

(Signed)     J. W. STEPHENSON.
December 30, 1912.          (Signed)     WILL TAYLOR.

It is admitted that the partnership was dissolved on 26 June, 1913, by the death of Stephenson. The surviving partner, Taylor, settled up the partnership business, and after paying all the expenses and the partnership debts there remains in his hands the sum of $3,676.69, together with certain uncollected notes aggregating $398.63, as set out in the decree.

It is admitted that the original capital put in by Stephenson has been impaired and that his estate must sustain a loss in any event. The plaintiff claims that all of the remaining assets in hands of the surviving partner should be applied to the repayment of the capital invested. Defendant contends that under the terms of the contract of partnership he is the owner of one-half of the capital and therefore entitled to one-half of the remaining assets.

We concur with the learned judge below that under the proper construction of the contract the capital of $5,000, put in by Stephenson, must be repaid, and as that will more than exhaust the assets, the defendant is entitled to nothing.

The defendant, admitting that he put in no cash, contends that he was to contribute his services for the period of the partnership, which

is fixed at twelve months, at a valuation equal to the $5,000 put in by Stephenson. We do not think the contract can fairly be so construed. Such construction is neither within the letter nor spirit of the agreement. In fact, it is a most unreasonable construction and ought not to be adopted unless it is the plain import of the language used. Such construction would give the defendant $2,500 in cash for his services for twelve months, in addition to one-half of the net profits. It is the same thing as if Stephenson had handed defendant $2,500 in money for defendant to pay in on the capital of $5,000 and then paid in the remaining $2,500 himself, and at same time agreed to pay defendant half the profits, all for his personal services.

Under his contention, if the partnership had been dissolved by the death of Stephenson the next day after it was formed, the defendant would have made $2,500 and Stephenson's estate would have lost $2,500, and this in the face of the fact that the agreement provided that Taylor should have but one-half of the profits; that is, that the profits should be divided equally.

It is uniformly held that after the debts of a partnership are paid, the capital must be returned to the partners who invested it before there are profits to divide, and even those authorities which hold that the capital upon being invested becomes joint property, nevertheless also hold that the relative rights of the partners therein created by the proportions respectively advanced by them are not disturbed when it comes to a settlement of the partnership.

Mr. Bates says in his treatise on Partnership, vol. 1, sec. 181: "The capital of a partnership is to be treated as if a debt, and to be first paid before the profits are divided, and, in case of impairment, to be paid less the equalization of losses." And again, section 256: "The capital, in whatever shape contributed, becomes at once the property of the firm, and is no longer individual property. . . . The fact that one partner is to, and does, contribute all the capital and the other services only does not affect the rule, nor should it. Even if in such case the partners dissolve the day after the contribution to capital was made, the capital is joint property, but the interest in it may be in the proportion of all to nothing, whether the partnership be regarded as a joint ownership in different proportions or the firm be considered a conventional entity distinct from its constituent members, and members' interests a mere claim upon a share of surplus. The rules of distribution on winding up, which require repayment of capital to the respective partners after equalizing losses before distribution between them, prevents any inequality arising from the cessation of individual ownership in the contribution of capital."

The fact that one partner has furnished all the capital and the other all the services does not alter the rule. The loss of capital is like any other loss, and the partner who contributes his services and loses them is debtor to the other for such share of the capital as represents the amount of loss he is to bear. Bates, sec. 815, giving a number of illustrations.

The same author (section 813) further says: "If there are no profits and the capital has been impaired or wholly lost, in dividing losses the deficit must be repaid like any other loss, for impairment of capital is a loss the same as any other, and is not to be reimbursed out of the profits merely. That the capital has been contributed unequally and losses are to be equal makes no difference, for if the capital has been wholly paid by one partner, the other contributing services and skill, the latter who has lost his time owes to the former the same proportion of a loss of capital that he would be chargeable with had the losses not reached the capital, but had simply diminished the profits."

Many pertinent cases are cited in the notes.

Thus in *Norman v. Conn.*, 20 Kan., 159, the capital was unequally contributed and profits were to be equally divided; it was held that the total of the expenditures are to be deducted from the total of the capital and receipts, *the capital is then to be paid* and the balance is to be divided equally as profits.

In *Livingston v. Blanchard,* 130 Mass., 341-342, L. had put in all the capital, $3,300; the other partner, B., was to receive a salary as part of the expenses. On dissolution the whole assets sold for $3,718.26. The salary had been paid, and of the proceeds $3,300 was paid to L. as his capital, together with one-half the profits, less one-half the depreciation in value of the fixtures, and the balance to B. This was held to be as favorable to B. as he was entitled to.

The judgment of the Superior Court is
Affirmed.